**SHEARMAN & ASSOCIATES, INC.
and GULF COAST CARIBBEAN SUPPLY,
INC., Plaintiffs
v.
CONTINENTAL CASUALTY COMPANY, Defendant**

Civ. No. 94-153

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 24, 1995

ELIZABETH A. CLARK, ESQ., *for Plaintiffs*

MARSHALL A. BELL, ESQ., *for Defendant*

MOORE, *Chief Judge*

### MEMORANDUM OPINION

This matter is before the Court on plaintiff's motion for partial summary judgment. For the following reasons, plaintiff's motion will be granted.

## Factual and Procedural Background

Shearman & Associates, Inc. ("Shearman" or, together with Gulf Coast, "plaintiffs") contracted with a general contractor, Douglas Construction Company ("Douglas") to provide labor and services for the construction of the St. Thomas Nursing Facility ("the project"), owned by the St. Thomas Nursing Home Limited Partnership ("the owner"). Plaintiff, Gulf Coast Caribbean Supply ("Gulf Coast" or, together with Shearman, "plaintiffs") provided materials for the project pursuant to purchase orders issued by Douglas or the owner as provided by the subcontract between Shearman and Douglas.[1] Continental Casualty Company ("defendant" or "Continental") acted as surety on the project and provided a payment bond.

The project has been substantially completed and is currently occupied and in use. The owner has not paid Douglas the full amount due on the contract for reasons unrelated to the issue before the Court.[2] The plaintiffs have been paid some amounts by Douglas, but allege that Douglas has not paid them fully for their work. Thus plaintiffs filed this suit on October 12, 1994 against Continental, whom they claim is liable, as surety, for the unpaid amounts under the payment bond. We have jurisdiction pursuant to 28 U.S.C. § 1332 because of diversity of citizenship.[3]

The payment bond simply provides that both Douglas and Continental are jointly and severally liable to all claimants. A claimant is defined as "one having a direct contract with the Principal [Douglas] or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract . . . ." The bond further states that

> every claimant who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may

---

[1] There is no dispute that Gulf Coast is also subject to the terms of the subcontract between Shearman and Douglas even though Gulf Coast is not a signatory to that contract.

[2] *See infra* p. 4 and note 4.

[3] Plaintiffs are Virgin Island companies while the defendant is an Illinois company. The amount in controversy exceeds $ 50,000.

193

sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.

Defendant Continental argues that its liability as surety is coextensive with Douglas' liability, and that it can assert all of the defenses that Douglas can assert, including a clause in the subcontract between Douglas and plaintiffs, typically referred to as a "pay when paid clause," which purports to make Douglas liable to pay plaintiffs only to the extent it has been paid by the owner. Because Douglas has not been fully paid by the owner and Douglas is not required to pay plaintiffs their share of the unpaid amounts, Continental also is not required to pay plaintiffs under the bond, or so Continental would have us rule.

The pay when paid clause of the subcontract between Douglas and the plaintiffs reads as follows:

Subcontractor agrees that as a CONDITION PRECEDENT to the contractor's [Douglas'] obligation to make any payment to subcontractor under the subcontract agreement, including final payment, the contractor must receive payment therefor from the owner. In the event the contractor does not receive all or any part of the payment from the owner with respect to the subcontractor's work, whether because of a claimed defect or deficiency in the subcontractor's work, or for any other reason, the contractor shall not be liable to the subcontractor with respect to any sums thereto.

Plaintiffs filed this motion for summary judgment, originally asking the court to grant all of the relief requested in the complaint. However, in subsequent pleadings and at oral argument on the motion, the plaintiffs narrowed their summary judgment request to a ruling on the applicability of the 'pay when paid' defense put forth by Continental.[4]

---

[4]Defendant's response to plaintiffs' original motion makes clear that there are genuine issues as to material facts that preclude summary judgment on the entire matter or even on the issue of liability alone. Defendant makes several arguments in addition to the pay when paid clause why Douglas, and therefor defendant, are not liable for the alleged unpaid sums. For example, some of the amounts plaintiffs claim as due are for delay damages which defendant argues is not covered by the subcontract. In addition,

## Discussion

■ The sole issue before the Court is thus whether under Virgin Islands law a surety may use as a defense the pay when paid clause in the contract between a general contractor and its subcontractors. Because this case arises under diversity jurisdiction, it is the duty of this Court to apply the existing law of the Virgin Islands, or do its best to interpret Virgin Islands law as the Appellate Division of the District Court would determine it. For the reasons recited below, we hold that it is contrary to Virgin Islands public policy for a surety to assert against a subcontractor the defense of a pay when paid clause in a subcontract between the general contractor and the subcontractor.

We look first to the Virgin Islands Code and to the controlling decisions of the Appellate Division of the District Court, and if we find none, we then look for guidance to opinions of the Territorial Court, District Court and Court of Appeals for the Third Circuit. Since our independent research has found no Virgin Islands decisions, nor have any of the parties submitted any such authority, we examine other local law to see if we can glean how the Appellate Division would decide this issue. The Virgin Islands Code deals with land owners, contractors, subcontractors and their improvements to land in a detailed chapter on construction liens. V.I. Code Ann. tit. 28, §§ 251 -270 (Supp. 1994) ("Construction Lien Law").

■ Reading the Construction Lien Law as a whole, we find it to be a clear declaration by the Legislature of a public policy to protect subcontractors from the risk of nonpayment. For example, upon compliance with certain procedural necessities, a subcontractor "has to the extent provided in this chapter a lien to secure payment of the contract price on the contracting owner's real estate which is being improved," which lien is imposed "even though the

---

defendant argues that the other amounts claimed are from a direct contract the plaintiffs entered with the owner, not with Douglas, and thus are not covered by the payment bond. In addition, defendant argues that part of the reason the owner has not paid is because of defective and delayed performance by plaintiffs. While these factual disputes over the amounts Douglas owes the plaintiffs are not resolvable in a summary judgment motion, the applicability of the 'pay when paid' clause presents a pure question of law.

owner has not made an agreement giving a real estate security interest" to the subcontractor. *Id.* § 253. A subcontractor has the protection of this statutory lien "to the extent" that the prime contractor or owner have not procured and recorded a payment bond. § 259. Thus, the statute allows the landowner to free her real estate from a subcontractor's lien by substituting the protection of a payment bond, provided the bond "obligate[s] the surety company to pay all sums due to subcontractors . . . for services and materials supplied to the prime contractor . . . pursuant to the contract under which the lien would otherwise arise." § 259(b).

Here plaintiffs have no statutory construction lien against the owner's property because the general contractor and the owner did secure a payment bond from Continental which purports to pay all sums due to subcontractors for services and materials supplied to the project under the subcontract. To allow Continental to use as a defense the fact that the owner has not paid Douglas in full would result in plaintiffs having no means to collect sums due under the contract merely because the owner has not paid Douglas. The net effect of the payment bond under Continental's position would be to strip the plaintiffs of the protection of the statutory lien without the concomitant assurance of collecting from the surety under the payment bond.

■ ■ We can discern from the Construction Lien Law no suggestion that the breadth of the protection to be afforded subcontractors by a payment bond is any less extensive than the protection afforded under the construction lien for which it is substituted. When suing to enforce a construction lien, no 'pay when paid' defense is available to the general contractor. The purpose of the construction lien is to secure "payment of the contract price." *Id.* § 253. Moreover the statute contemplates that lien rights may be enforced before the owner has paid the contractor in full. For example, section 258, "Attachment and priority of lien," provides that all liens will share in the "funds available" which include "sums unpaid under the prime contract." §§ 258 (d), (e). In addition, section 274, "Defense by contractor at own expense; withholding and deducting funds due contractor . . .," provides that "during the pendency of [an action to enforce a lien] the owner may withhold from the original contractor the

196

amount of money for which the claim of lien is recorded." § 274. Obviously, an owner can only withhold funds that it has not yet paid. Because the general contractor cannot defend a construction lien enforcement action by arguing that the owner has not paid, this Court holds that a surety may likewise not assert a 'pay when paid' defense when suit is made upon the payment bond that has been substituted for the construction lien.

To support its argument that it may assert the 'pay when paid' defense, Continental relies on a maxim of general principal-surety law which states that a surety may generally set up any defense which is available to the principal. *See, e.g.,* 74 Am. Jur. 2d Suretyship § 25 (1974). However, Continental cites no authority where a surety has been allowed to assert the pay when paid defense of its principal.[5]

Support for this Court's holding that the pay when paid defense cannot be asserted by defendant can be found in a well-reasoned opinion of Florida's highest court. *OBS Co., Inc. v. Pace Construction Corp.,* 558 So. 2d 404 (Fla. 1990). The court there stated that a surety is still liable under a payment bond to subcontractors even if the subcontract did not require the general contractor to pay them until the owner had paid it. Discussing Florida's mechanic's lien law, which is similar to the Virgin Islands Construction Lien Statute in that it allows property owners protection from subcontractors' liens when the security of a bond is substituted, the court stated that

> it would be inequitable to nullify the bonding company's liability because the owner has not paid the contractor. . . .
>
> . . . .
>
> To allow nonpayment by the owner to prevent recovery both under the subcontract and the payment bond would thwart the entire purpose and scheme of the mechanics' lien

---

[5] In its own research, the Court discovered an unpublished opinion by the court of appeals in *Tennessee, Allen Elec. Co. v. Fidelity & Deposit Co. of Maryland,* 1989 Tenn. App. LEXIS 385, May 24, 1989, which held that a surety could assert a pay when paid defense available to the principal. However that case is distinguishable because Tennessee law did not abolish a subcontractor's lien rights because of the existence of a payment bond. The court stated, "the subcontractors mechanics' lien rights are unaffected by our decision concerning the contractor's obligation for payment under its contract." *Id.* at *18.

law and statutes allowing a bond in lieu of exposure to liens. . . . Because the security of the bond has been substituted in place of attaching a lien against the owner's property, [the subcontractor] clearly has a legitimate claim under the bond.

*Id.* at 408. The same inequity would arise here, if the plaintiffs were precluded from seeking payment from Continental simply because the owner has not paid Douglas.[6]

In conclusion, Continental may not assert as a defense the pay when paid clause found in the subcontract, because it is against public policy as expressed in the Virgin Islands Construction Lien Statute.

ENTERED this 23rd day of October, 1995.

Thomas K. Moore, Chief Judge

## ORDER

For the reasons set forth in the attached Memorandum, it is hereby

ORDERED that plaintiffs' motion for partial summary judgment is GRANTED.

---

[6] *See Schuler-Haas Elec. v. Aetna Cas. & Sur.*, 49 A.D.2d 60, 371 N.Y.S.2d 207 (NY Sup. Ct. 1975) (surety was still liable despite the existence of a pay when paid clause in the subcontract and in a simultaneously executed performance bond). The court noted that a clear expression that a subcontractor could not sue on the payment bond until the owner had made final payment to the general contractor would be required in the payment bond for the surety to avoid liability. Such a limitation conditioning Continental's liability under the payment bond would render the bond of no effect under our statute since it would not meet the requirements of section 259, namely, it would not obligate the surety to pay all sums due and subcontractors would still have their lien rights against the owner's property. 28 V.I.C. § 259.